# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**NESLIE I. BERNARDI ORTIZ, et al.,**

    **Plaintiffs,**

        **v.**

**CYBEX INTERNATIONAL, INC., et al.,**

    **Defendants.**

**CIVIL NO. 15-2989 (PAD)**

## OPINION AND ORDER

Delgado-Hernández, District Judge.

This is an action for damages under Puerto Rico law predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (Docket Nos. 1 and 28). Before the court are two motions for summary judgment, one seeking dismissal of third-party claims as a result of a settlement agreement reached between plaintiffs and some of the third-party defendants (Docket No. 236), the other, filed by non-settling third-party defendants, requesting dismissal on timeliness, improper impleader, jurisdictional, and what may be characterized as "indirect settlement beneficiary" grounds (Docket No. 279). The motions generated oppositions, replies and sur-replies. See, Docket Nos. 277, 300, 323, 333, 334, 339, 352, 357, and 358. For the reasons explained below, the motion for summary judgment at Docket No. 236 is GRANTED and the motion at Docket No. 279 is DENIED.

## I.   BACKGROUND

Working out at a gym, Neslie I. Bernardi-Ortiz suffered severe injuries, leading her and her parents and siblings to initiate this action for recovery of damages against Cybex International, Inc., the manufacturer of the exercise machine that broke on Ms. Bernardi, and Cybex's insurer,

Navigators Specialty Insurance Company Code (Docket Nos. 1 and 28).[1]  Cybex filed a third-party complaint against: (1) the gym's owner and/or operator HCOA Mayagüez, LLC, HCOA PR Management Services LLC, HCOA PR Franchise Holding, TS Fitness PR HoldCo, LLC, Total Body Fitness PR, LLC and their insurer, MAPFRE-PRAICO Insurance Company; and (2) Fitness and Spa Solutions, Inc., Fitness Services, Inc., Zayra Sánchez, Milton Esteva, Irwin Rodríguez and their insurer, Universal Insurance Company (Docket Nos. 14, 48, 140, 142, 263, 264).

During discovery, plaintiffs settled with MAPFRE, the HCOA entities and TS Fitness PR HoldCo, as a result of which, the settling defendants moved for summary judgment (Docket No. 236).  The remaining third-party defendants (the "Universal defendants") followed suit, moving for summary judgment as well (Docket No. 279).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the record shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  <u>See</u>, Fed R. Civ. 56 (a)(setting forth standard).  The issues s*ub judice* consist of legal disputes properly raised by way of Rule 56 for evaluation and decision.

## II.      DISCUSSION

### A.  Bar Order

In August 2017, as part of case management and ordering of proceedings, the court prohibited filing of motions for summary judgment except motions related to State Insurance Fund (<u>i.e.</u> workers' compensation) immunity (Docket No. 215, pp. 1-2).  Subsequently, the parties moved for summary judgment as indicated above.  The settling defendants' motion is predicated

---

[1] Unless otherwise stated, Cybex and Navigator will be hereinafter collectively referred to as "Cybex."

on a settlement agreement entered into after the bar order, and thus, is based on a ground that did not exist at the time the order was docketed. As such, it falls beyond the scope of the order.

In contrast, the Universal defendants' motion for summary judgment was partly filed in violation of the order, for it is predicated on: (1) the argument that the action is time-barred; (2) allegedly improper impleader and related jurisdictional grounds; and (3) the theory that the actions against the Universal defendants cannot subsist in light of the settlement agreement reached between the plaintiffs by the settling defendants. The court will not consider the timeliness issue given that, contrary to the other grounds proffered in support of the motion, it is not related to the court's jurisdiction or the settlement agreement. In the interest of judicial economy, however, the motion will not be ordered stricken only to be refiled without reference to arguments regarding the alleged untimeliness.

### B. Impleader/Jurisdiction

The Universal defendants allege that the third-party actions which Cybex filed against them are improper and suggest that if not dismissed, could result in lack of subject matter jurisdiction due to absence of complete diversity of citizenship between the parties (Docket No. 279, p. 11; Docket No. 352, p. 2). Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, at any time after the commencement of the action, a defending party, as a third-party plaintiff, may cause a summons to be served upon a person not a party to the action "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). Third-party practice under Rule 14 is usually referred to as impleader. See, 3 MOORE'S FEDERAL PRACTICE, § 14.02, p. 14-9 (so noting). It basically permits a defending party to join an absentee for the purpose of deflecting to that absentee all or part of its potential liability to the plaintiff on the underlying claim. Id. at § 14.03 [1], p. 14-10. Almost always, this deflection will

be based on an assertion that the absentee owes the defending party a duty of contribution or indemnity.  Id.

The right of contribution does not arise until one of the tortfeasors pays more than its share of liability.  Nevertheless, a contingent claim may be filed against any of the other alleged tortfeasors.  Therefore, a tortfeasor may use a third-party action to accumulate a claim against any potential joint tortfeasor contingent to the result of the principal action.  See, MOORE'S, supra, at §14.05 [2], pp. 14-28-14-29 (Rule 14(a) permits impleader of joint tortfeasors for contribution before the claim accrues; the fact that defendant's right has not yet accrued by virtue of paying a judgment does not affect the sufficiency of its third-party complaint to state a claim for relief).

Third-party practice fosters efficient litigation by packaging the underlying claim for liability and any contribution or indemnity claims in a single case, sparing the judicial system and at least some of the parties the waste and expense of multiple lawsuits.  Id.  It does not, however, operate in a vacuum.  It is only available when the applicable substantive law provides the right to pursue the claim against the third-party defendant.  See, United Nat. Ins. Co. v. Indian Harbor Ins. Co., 306 F.R.D. 153, 154 (E.D. Pa. 2015)(liability of third-party defendant depends on relevant substantive law); Connors v. Suburban Propane Co., 916 F. Supp. 73, 76 (D.N.H. 1996)(Rule 14 is available to bring causes of action recognized under statutory or common law).

From these parameters, plaintiffs allege that Bernardi was injured while performing squat exercises using a Cybex Smith Press machine at a gym owned by HCOA Mayaguez LLC (Docket No. 28, ¶¶ 17, 18).  They assert the machine suddenly broke, and a weight of approximately 270 pounds hit Bernardi's cervical area, causing paraplegia.  Id. at ¶¶ 18, 20.  They claim Cybex is strictly liable to them for having designed, manufactured and marketed a defective machine, and for negligence, as it failed to take appropriate measures to avoid accidents such as the one that

occurred here, and to provide adequate instructions and warnings of the risks involved in using the equipment (Docket No. 1, ¶¶ 26, 28, 32, 33, 34, 37, 38, 39).

Cybex filed third-party claims for contribution and indemnification against the Universal defendants, alleging that those defendants were responsible for maintaining and servicing the machine and that plaintiffs' injuries, if any, were caused by the Universal defendants' negligent conduct in failing to observe necessary and routine maintenance of the machine and/or modified or altered the machine from its original manufactured condition (Docket No. 263, ¶¶ 8, 9, 10,16, 17, 20, 21, 24, 25, 26, 29, 32, 33). Thus, it brought forth allegations upon which the Universal defendants may be liable to it for all or part of plaintiffs' claims, by pointing to a direct line of liability between itself and those defendants, a legitimate line to establish and pursue, given that Puerto Rico permits tortfeasor contribution. See, Fernández v. Corporación Insular de Seguros, 79 F.3d 207, 210 (1st Cir. 1996)(so recognizing in context of Rule 14(a)).

Impleader is proper if there is a question as to whether the parties are in fact joint tortfeasors. See, Arroyo-López v. Hospital Dr. Domínguez, Inc., 262 F.R.D. 93, 96 (D.P.R. 2009) (so noting). Requiring a district court "to determine the merit of all defenses potentially available to the original defendant as a precondition to allowing that defendant to file a third-party complaint would frustrate [the core purpose of Rule 14(a)] and countervail the efficient allocation of judicial resources." Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 395 (1st Cir. 1999). Consequently, the impleader here does not violate Rule 14(a) of the Federal Rules of Civil Procedure. See, Corning Glass Works v. Puerto Rico Water Resources Authority, Inc., 396 F.2d 421, 423 (1st Cir. 1968)(alleged joint tortfeasor defendant may implead all who by their concurrent negligence might be liable to him for contribution).

The Universal defendants take issue with this conclusion, alleging they are not liable to Cybex for product liability (Docket No. 279, pp. 13-17; Docket No. 352, pp. 13-15). Admittedly, what the defendant, third-party plaintiff asserts in its own right must be derivative of some claim set forth in the plaintiff's complaint. See, Metropolitan Life Ins. Co. v. Ditmore, 729 F.2d 1, 9 (1st Cir. 1984)("[t]hird party claims [are] … by definition logically dependent on the resolution of the original suit …"). But plaintiffs brought forth claims for product liability and negligence. And Cybex contends the Universal defendants were negligent in a way that would make them liable to Cybex as joint tortfeasors for contribution and/or indemnification in the event Cybex is found liable to plaintiffs (Docket No. 339, p. 17; Docket No. 358, p. 5). In any event, at the end of the day, the focus on the products liability part of the complaint is immaterial because contribution is available even when tortfeasors are liable under different theories of liability. See, Lehman, 166 F.3d at 394 (so noting). Rule 14 actions are permitted notwithstanding the fact they do not include claims based on the same cause of action or theory of liability asserted in the original complaint. See, Wanta v. Powers, 478 F.Supp. 990, 993 (M.D. Pa. 1979)(acknowledging rule)(citing Judd v. General Motors Corp., 65 F.R.D. 612 (M.D. Pa. 1974)(third-party complaint based on negligence properly brought in action where the main claim was based on strict liability in tort). In the end, the Universal defendants' argument lacks merit.

Finally, third-party claims fall within the court's supplemental jurisdiction over the original suit. See, Ditmore, 729 F.2d at 9 (recognizing jurisdictional characterization of these types of claims). That being so, they do not need a separate subject jurisdictional basis to stand. See, Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 FEDERAL PRACTICE AND PROCEDURE (2010), CIVIL § 1444, p. 375 (discussing issue). If one were needed, there is diversity of citizenship between the parties in the original case and between the parties in the

impleader action. In addition, plaintiffs are not pursuing any remedy in the instant case against the otherwise third-party defendants.[2] Therefore, the Universal defendants' jurisdictional challenge anchored on the impleader fails.

### C. Settlement Agreement

The settling defendants argue that the settlement agreement requires dismissal of the third-party actions against them (Docket No. 236). Admitting they are not a party to the settlement agreement, the Universal defendants nonetheless state the action against them cannot stand in light of the agreement (Docket No. 279). Cybex opposes both dismissal requests (Docket Nos. 275, 276). As the court sits in diversity, it applies Puerto Rico's substantive law. See, Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 772-773 (1st Cir. 1994)(when sitting in diversity, a federal court must apply the substantive law of the forum state).

### 1. Universal Defendants

The Universal defendants contend that the settlement agreement extinguishes all claims against them because Cybex's claims are contractual in nature, based on a maintenance agreement between the Universal defendants and the settling HCOA entities, and insofar as the agreement operates to extinguish Cybex's claims against the HCOA defendants, the claims against the Universal defendants must be dismissed (Docket No. 279, pp. 21, 26; Docket No. 339, p. 18). Cybex's third-party action is not one for breach of contract. Its claim does not depend on why the Universal defendants undertook to repair and maintain the Cybex machine, rather than on the allegation that they did so negligently. See, Docket No. 339, pp. 14-15 (stating proposition). Hence, the action remains regardless of HCOA's status as a party in the lawsuit.

---

[2] They did sue the settling and Universal defendants in the Mayaguez Part of the Court of First Instance of Puerto Rico. See, Docket No. 238-1, p. 2; Docket No. 279, Exhibit 6; and Docket No. 335, Exhibit 9.

More important, however, whether a settlement agreement extinguishes a claim depends on the settling parties' intent. See, Vernet v. Serrano-Torres, 566 F.3d 254, 260 (1st Cir. 2009)(so observing). The language in the agreement controls. Id. at 261. The release or discharge from liability granted by a plaintiff to a joint codebtor "does not release the other joint tortfeasors from liability for the damage when the intention of the parties in the settlement and release agreement has acknowledged this fact." Szendrey v. Hospicare, Inc., 158 D.P.R. 648 (2003), Official English Translation (Attachment I to Opinion and Order), p. 4.

On this end, Paragraph 1.2 the settlement agreement provides that the release it contains is intended to inure to the benefit of the MAPFRE RELEASED PERSONS (that is, the settling defendants) only and not to other parties "including but not limited to, Cybex International, Inc., Navigators Specialty Insurance Company, Fitness & Spa Solutions, Inc., Milton Esteva, Zayra Sánchez, Universal Insurance Company, Fitness Services, Inc. or Irwing Rodríguez Varela" (Docket No. 238-1, pp. 3-4). Likewise, Paragraph 3.13 clarifies that the release "in no way shall be interpreted as a release of … Cybex International, Inc.[,] Navigators Specialty Insurance Company, Fitness & Spa Solutions, Inc., Milton Esteva, Zayra Sánchez, Universal Insurance Company, Fitness Services, Inc. or Irwin Rodriguez Varela and/or any other insurance carrier." Id. at p. 10.

As indicated earlier, the Universal defendants include Universal Insurance Company, Fitness & Spa Solutions, Inc., Milton Esteva, Zayra Sánchez, Fitness Services, Inc. and Irwin Rodríguez Varela. And so, from the language of the settlement agreement it is evident that the parties thereto did not intend to extinguish any of the claims against the Universal defendants. The situation is not unlike the one the Puerto Rico Supreme Court evaluated in Merle v. West Bend Co., 97 P.R.R. 392 (1969).

In <u>Merle</u>, plaintiff filed a claim for damages against two different defendants under the Puerto Rico dealer's act and general tort statute, and subsequently entered into a settlement stipulation with one of the codefendants. <u>Id.</u> at pp. 393-394. The remaining defendant, West Bend Co., requested the dismissal of the complaint against it, arguing that according to the complaint the defendants were severally liable for the damages and the release in the settlement agreement benefited West Bend because it was a solidary debtor. <u>Id.</u> at p. 394. The trial court granted the motion to dismiss (<u>id.</u>), but the Puerto Rico Supreme Court reversed, holding that joint tortfeasors are not released from liability if the intention of the parties did not contemplate it. <u>Id.</u> at 398-400. And in that case, they did not intend to release West Bend. <u>Id.</u> at 402-403.

Applying the same principle, the First Circuit in <u>Vernet</u>, 566 F.3d 245, rejected a codefendant's argument that plaintiff's settlement with the codefendant's employee, who had crashed into co-plaintiff's vehicle, legally extinguished any possible vicarious liability on its part because in that instance, liability was contingent upon the existence of the employee's primary liability, which no longer existed by virtue of the settlement. <u>Id.</u> at pp. 257-258. The First Circuit examined the language of the settlement agreement, concluding that plaintiffs did not intend for the settlement with the employee to extinguish their claims against the codefendant. <u>Id.</u> at pp. 260-261.[3] So too here. In consequence, the settlement agreement does not lead to dismissal of Cybex's claims against the Universal defendants.

### 2. Settling defendants

Having examined the settlement agreement in connection with the Universal defendants, the court turns to the effect of the agreement on the plaintiffs, the settling defendants, and Cybex.

---

[3] Plaintiffs were the direct victim of the crash, and her spouse and two sons. <u>See</u>, <u>Vernet</u>, 566 F.3d at 256 & n.1 (identifying plaintiffs).

The agreement operates at various levels.  As to definitions, Section 1.2 refers to the settling defendants as MAPFRE RELEASED PERSONS (Docket No. 238-1, p. 3).  Concerning release, Section 3.1 provides that in consideration of the amount to be paid as part of the settlement, plaintiffs release the MAPFRE RELEASED PERSONS from "all past, present or future claims … of any kind whatsoever … whether based on a tort, contract, statute or other theory of recovery … [that] may in any way arise out of, or are in any manner related to the Casualty," which Section 1.3 defines as "the accident in which Neslie Bernardi was injured on December 11, 2013 at the HCOA gym in Mayaguez, Puerto Rico."  Id. at pp. 4, 5.

Section 3.5 addresses the effect of liability on the settling defendants, stating that plaintiffs "waive the right to recover any damages that may be adjudged or imposed against the MAPFRE RELEASED PERSONS by way of judgment or otherwise imposed …  and agree that: (1) the total amount of damages which the plaintiffs may obtain by way of judgment in any action against other non-released tortfeasors or defendants "shall be reduced to the extent of the proportionate share of liability attributed to the MAPFRE RELEASED PERSONS ...." and (2) "any liability of the MAPFRE RELEASED PERSONS has been extinguished by virtue of [the agreement]  this Agreement."  Id. at p. 7.

Moreover, Section 3.5 expresses that "it is the specific intent of the [plaintiffs] to release the MAPFRE RELEASED PERSONS of any and all liability arising from the Casualty and Lawsuits, and such release will apply to the MAPFE RELEASED PERSONS not only in the external relationship between [plaintiffs] and the MAPFRE RELEASED PERSONS, but also in the internal relationship between joint tortfeasors."  Id. (emphasis in original).  Further, it specifies that plaintiffs "will absorb whatever portion of liability that may be assessed against the MAPFRE RELEASED PERSONS in the future, if any …. meaning that the MAPFRE RELEASED

PERSONS will never have to pay plaintiffs or any non-released joint tortfeasors or their insurers, or cross-claimants or third-party plaintiffs any amounts over the amounts paid by virtue of [the agreement]." Id. at pp. 7-8. Furthermore, it states that "it is the express intention of the parties to [the agreement] that the MAPFRE RELEASED PERSONS … not pay any compensation to anyone other than the compensation for damages in section 2.1" of the agreement. Id. at p. 8.

Following the same line, Section 3.6 provides that plaintiffs agree to hold harmless MAPFRE RELEASED PERSONS against any liens, claims, suits, demands, liabilities, judgments, decrees, awards, and causes of action of whatever kind or nature, which arise from or relate to, directly or indirectly, the injuries allegedly suffered by the plaintiffs from the casualty, which may be brought by any party or entity as a result of medical services or benefits provided to plaintiffs, a provision that the same section indicates is "intended to encompass and include claims or demands brought by any provided or medical, psychiatric, rehabilitative, or other services, any other person, party, or entity seeking to enforce subrogation, contribution, and/or indemnity rights against the MAPFRE RELEASED PERSONS, and any person, party, or entity claiming to be entitled to damages or benefits as a result of the Casualty." Id.

As to disposition, Section 6.1 expresses that in "the case filed before the U.S. District Court …, the MAPFRE RELEASED PERSONS will file a Motion requesting dismissal of the Third-Party Complaints filed by other parties against MAPFRE RELEASED PERSONS notifying that an agreement has been reached between MAPFRE RLEASED PERSONS and [p]laintiffs. Plaintiffs will not oppose such request and authorize the MAPFRE RELEASED PERSONS to represent in the motion [p]laintiffs' support of the same." Id. at p. 11. Additionally, it provides that "[t]he parties … agree to provide reasonable cooperation, including to provide non-privileged documents and to make witnesses available in the lawsuits and execute any and all supplementary

documents and to take all additional action which may be necessary or appropriate to give full force and effect to the basic terms and intent of this settlement agreement or to any related claims." Id. at p. 12. The settlement agreement is comprehensive, covering all relevant aspects of liability to justify dismissal.

### i. Solidarity

In Puerto Rico, when the tortuous acts or omissions of more than one person have adequately caused a harm, each of the tortfeasors is solidarily liable to the plaintiff for the harm done. See, Tokyo Marine and Fire Ins. Co., Ltd. v. Pérez & Cía., de Puerto Rico, Inc., 142 F.3d 1, 8 (1st Cir. 1998)(discussing concept).[4] Solidarity originates in Roman Law. See, Fraguada Bonilla v. Hosp. Aux. Mutuo, 2012 TSPR 126, Certified English Translation (Attachment II), pp. 12-13 (so noting). The term emanates from the latin *in solidum*, defined as the whole of a sum. Id. at 13. Its defining features are laid forth in the Civil Code. See, Tokyo Marine and Fire Ins. Co., Ltd., 142 F.3d at p. 5 & n.4 (citing relevant civil code provisions); Zurich American Ins. v. Lord Elec. Co. of Puerto Rico, 828 F.Supp.2d 462, 469 & n.11 (D.P.R. 2011)(same).

Solidarity generates two types of effects: primary and secondary. Primary effects include the unity of debt and plurality of links. See, Fraguada Bonilla (Attachment II) at p. 14. Secondary effects refer to interruption of the statute of limitations and of delay, and the promise of compliance of all of the joint and several debtors. Id. These effects do not apply to extracontractual liability, which is considered imperfect in cases involving persons who do not know each other, who are merely accidental co-debtors or when their relations are sporadic. Id. at p. 15. In those instances,

---

[4] Adequate cause, a concept similar to proximate cause, permits the fact-finder to conclude that two or more persons "have caused" a harm on equal or different shares or degrees. Tokyo Marine and Fire Ins. Co., Ltd., 142 F.3d at p. 6 & n.5.

each of the tortfeasors' liability is autonomous or independent from that of the others.  <u>Id.</u>

However, each of them is jointly liable to the injured party for the totality of the damages awarded.

<u>Id.</u>

With this in mind, an obligation is solidary among debtors when each debtor is considered

in his relation with the creditor as debtor of the entire performance, obliged *in totum ex totalier*.

Because each solidary debtor is bound for the whole of the debt as if it were the only debtor, the

creditor has the right to demand payment of the entre credit from any of the debtors it chooses.

<u>See</u>, <u>Zurich America Ins</u>., 828 F.Supp.2d at 469 (acknowledging creditor's prerogative).  The

solidary debtor who has paid in excess of its portion of the debt has the right to demand

contribution from the remaining debtors to recover the excess amount paid.  <u>Id.</u>[5]  The right "extends

to insurers standing in the stead of a tortfeasor."  <u>Reyes-López</u> v. <u>Misener Marine Const. Co.</u>, 854

F.2d 529, 534 & n.23 (1st Cir. 1988).  Thus, solidarity results in an external relationship between

the creditor and the debtors making each of the debtors liable for the entire obligation, and in an

internal relationship among the debtors, wherein each debtor is liable for its own proportion of

fault or negligence.  <u>See</u>, <u>Quilez-Velar</u> (Docket No. 317, Exhibit 1)(Attachment III) at p. 7

(describing relationships).  The parties may work this configuration into settlement agreements

involving less than all of the solidary tortfeasors.

### ii.  Effect of Agreement

Where a plaintiff expressly releases one tortfeasor from all liability in the case –internal

and external– which may arise with respect to the tortious act subject of the claim, it is considered

---

[5] The right to contribution is known as "nivelación" (leveling), <u>Wojciechowicz</u> v. <u>United States</u>, 474 F.Supp.2d 291, 295 (D.P.R. 2007), and reimbursement, repayment, or return.  <u>See</u>, <u>Quilez-Velar</u> v. <u>Ox Bodies, Inc.</u>, 2017 TSPR 165, Certified English Translation (Docket No. 317, Exhibit 1)(Attachment III), p. 7 (so noting).

both a release of liability from the plaintiff to the settling joint tortfesor and a release of liability as between joint tortfeasors, with the plaintiff absorbing the portion of liability attributed to the settling tortfeasor. See, Fonseca v. Inter-American Hospital for Advanced Medicine, 2012 TSPR 3, Certified English Translation (Attachment IV), pp. 11-12 (explaining settlement agreement). In those cases, the plaintiff is estopped from collecting that portion of liability out of the non-settling tortfeasors. Id.

Those tortfeasors will only be liable for their percentage of liability after subtracting the amount of the released tortfeasor's portion of liability, not for the total amount of damages. Id. at p. 12. Correspondingly, the non-released tortfeasors cannot move for contribution against the tortfeasors that were released from liability. Id. And by the same account, the settling tortfeasor may not obtain contribution from the nonsettling tortfeasor because its payment did not discharge any part of that tortfeasor's debt. See, Diggs v. Hood, 772 F.2d 190, 196 (5th Cir. 1985)(so observing under the Louisiana Civil Code and Code of Civil Procedure).[6] Accordingly, the action of contribution would no longer be viable as a matter of law.[7]

In those settings, the plaintiff assumes the risk that the amount of the released tortfeasor's share of liability will be greater than that received in exchange for the release of liability, while the released tortfeasor assumes the risk that the amount of its share of liability will be less than the amount paid in exchange for the release. See, Fonseca, 2012 TSPR 3 (Attachment IV), p. 6 (discussing risks). In addition, if the released tortfeasor is ultimately found not liable, he will not

---

[6] The Louisiana Civil Code "shares a common parentage with the Puerto Rico Civil Code in that they are both derived from the Napoleonic Code." Tokyo Marine and Fire Ins. Co., 142 F.3d at 4 & n.1.

[7] The Puerto Rico Supreme Court discussed and validated these principles not only in Fonseca (Attachment IV) and Szendrey (Attachment I), but also in U.S. Fire Insurance v. A.E.E., 174 D.P.R. 219 (2008), Certified English Translation (Attachment V), and Sagardía de Jesús v. Hosp. Aux. Mutuo, 177 D.P.R. 484 (2009), Certified English Translation (Attachment VI). Where appropriate, for ease of reference the court will refer to this type of settlement agreement as Szedrey agreement.

be entitled to recover the amount paid, nor may the non-released tortfeasor demand a deduction of the amount paid by the released tortfeasor found not liable, allowing plaintiff to receive the gain. Id. at pp. 12-13.

The settling defendants do not have to remain parties in the action, as the nonsettling defendant effectively obtained contribution from the settling defendants by having assessed against it only its own percentage of liability. Id. In those conditions, the third-party complaint cannot survive because the settling third-party defendants would not be liable to the third-party plaintiff for "all or part of the plaintiff's claim against the third-party plaintiff" as is required to maintain an impleader action under Rule 14(a) of the Federal Rules of Civil Procedure. See, Szendrey, 158 D.P.R. 648, Certified English Translation (Attachment I)(pointing out that if the codefendant that remains in the action is liable to plaintiff only for the share that represents its degree of contribution to the cause of the damage, a third-party complaint is as unnecessary as it is untenable).

The First Circuit has upheld similar agreements, characterizing them as Pierringer releases, following the Wisconsin's Supreme Court's decision in Pierringer v. Hoger, 124 N.W.2d 106 (Wis. 1963). See, Austin v. Raymark Industries, Inc., 841 F.2d 1184, 1189 (1st Cir. 1988)(examining Pierringer agreement). As the First Circuit explained, in Pierringer the plaintiff in a tort action settled with all but one defendant before trial. Id. The settling defendants then filed a motion before trial to dismiss the cross-complaints for contribution filed against them by the one remaining defendant. The trial court granted the settling defendants' motions, for which the nonsettling defendant appealed. Id. The Supreme Court of Wisconsin ruled that the releases plaintiff executed preserved the plaintiff's cause of action against the nonsettling defendant, while barring the nonsettling defendant's right to contribution from the settling defendant. Central to the court's reasoning was the fact that the releases satisfied a part of the cause of action against the

nonsettling defendant in an amount equivalent to the settling defendants' proportionate liability.

Id.

Shifting focus, plaintiffs (i) released the settling defendants from all potential liability toward the plaintiffs (external relationship) and toward any third-party plaintiffs (internal relationship) with respect to all claims and damages arising out of the accident that Ms. Bernardi suffered in the HCOA gym in Mayaguez; and (ii) assumed and absorbed any liability that may be found against the settling defendants by way of judgment of otherwise. Further, the settling parties agreed that any future amount imposed against the non-settling tortfeasors would be reduced by way of the proportionate share of liability attributed to the settling tortfeasors such that in the end, the non-settling defendants would only be liable to the plaintiffs for their proportionate degree of liability, making the third-party complaint "unnecessary and untenable" as in Szendrey (Attachment I) at p. 6.

On this record, dismissal of the third-party actions against the settling defendants follows as a matter of law. See, Alumax Mill Products, Inc. v. Congress Financial Corp., 912 F.2d 996, 1010-1011 (8th Cir. 1990)(dismissing cross-claims for contribution and indemnity against settling defendants, as pursuant to settlement agreement, the non-settling defendant would only be liable for its own proportionate share of damages and no longer needed the protection of its cross-claims for contribution and indemnity); Bordelon v. Consolidated Georex Geophysics, 628 F.Supp. 810, 811-813 (W.D. La. 1986)(summary judgment dismissing third-party complaint against settling tortfeasor because the effect of the settlement was to reduce from any judgment against the nonsettling tortfeasor the proportion of fault attributable to the settling tortfeasor).[8]

---

[8] See also, Valet v. City of Hammond, 577 So. 2d 155, 160-161 (La. App. 1991)(summary judgment dismissing third-party claim for contribution as that right was lost as a result of settlement and release of solidary obligor, where obligee's recovery would be

### iii. Cybex's Objections.

Cybex objects to dismissal of the third-party complaint against the settling defendants on various grounds. In general, non-settling defendants "lack standing to object to a partial settlement." Alumax Mill Products, Inc., 912 F.2d at 1001. An exception, however, has been carved to benefit non-settling defendants to the extent they demonstrate that they will sustain some legal prejudice as a result of the settlement. Id. at 1002. So courts recognize that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action such as an action for contribution or indemnity. Id. On that basis, the court accords Cybex standing to object to the settlement and consequent dismissal of the third-party complaint against the settling defendants. Having credited standing, Cybex's objections follow.

First, Cybex asserts that plaintiffs and the settling defendants cannot by contracting between themselves, deny a third party like Cybex the rights it enjoys under the law (Docket No. 277, p. 2; Docket No. 323, p. 2). The assertion is accurate, see Río Mar Associates LP, SE v. UHS of Puerto Rico, Inc., 522 F.3d 159, 164 (1st Cir. 2008)(so acknowledging), but of no consequence in the present case, as the settlement agreement does not deprive Cybex of any rights. In the end, it will only pay for its proportionate share of liability, no more than if all defendants had gone to trial. See, Pierringer, 124 N.W. 2d 106 (granting settling defendants' motion to dismiss cross-complaints for contribution filed against them by the one remaining defendant, given that defendant effectively obtained contribution from the settling defendants by having assessed against it only its own share of liability, and as long as the causal negligence of all the relevant parties is determined by the jury, there is no requirement that a settling defendant remain a party to the suit).

---

reduced by the amount corresponding to the released obligor's portion of fault).

Second, Cybex argues the settlement agreement is tantamount to a waiver of Cybex's claims against the settling defendants (Docket No. 277, pp. 10-11), a result contrary to the holding of Febles Montalvo v. Pérez Cordero, 2011 WL 5166431 (TCA), Certified English Translation (Docket No. 277, Exhibit 6)(Attachment VII), p. 6. Cybex's reliance on Febles Montalvo is misplaced. In that case, a panel of the Puerto Rico Court of Appeals affirmed a trial court's decision to dismiss plaintiffs' claims against a codefendant, Reyes Contractor. Id. at p. 3. Plaintiffs had sued several entities, one of which, the Highway Authority ("HA"), filed a third-party complaint against Reyes Contractor alleging that, if it were held liable for plaintiffs' damages, Reyes Contractor would be directly responsible to plaintiff or would have to reimburse HA for any sum of money it had to pay. Id.

Plaintiffs amended the complaint to include direct allegations against Reyes Contractor (id. & n.2) and entered into a settlement agreement with it, leading the trial court to dismiss all claims against Reyes Contractor. Id. at p. 3. HA sought reconsideration, arguing, among other things, that it had not waived the right to pursue its claim against Reyes Contractor. Id. The trial court reconsidered its prior decision and dismissed only plaintiffs' claims against Reyes Contractor, rather than all claims against it. Id. The appellate panel affirmed the trial court's ruling, noting that it was "legally impossible" for the parties to the settlement agreement to have released Reyes Contractor and its insurers from all liability. Id. at p. 8. For that reason, Cybex argues that "[p]laintiffs are free to abandon any claims they might have against [the settling defendants] but they cannot do the same with respect to Cybex's … claims" (Docket No. 277, pp. 11-12).

As relevant, the settlement agreement at issue in Febles Montalvo stated that: (1) plaintiffs released Reyes Contractor and its insurer (Mapfre-Praico) from all liability toward them for the damages alleged in the Complaint; (2) if Reyes Contractor was found at fault in any degree,

plaintiffs waived their right to claim from Reyes Contractor and its insurer that part of the judgment attributable to Reyes Contractor's fault or negligence; (3) plaintiffs would only collect from HA and any other liable party that part of the judgment attributable to those parties' fault; and (4) Reyes Contractor would not have to pay plaintiffs or the remaining defendants by way of contribution, leveling, or any other concept. See, Febles Montalvo (Docket No. 277, Exhibit 6)(Attachment VII), at pp. 6-7 (describing settlement agreement). The appellate panel limited dismissal to plaintiffs' claims against Reyes Contractor, refusing to extend the effect of the settlement agreement to other claims referred to therein because, for the panel, it was "legally impossible" for settling parties to waive other parties' claims. Id. at p. 8.

As a general proposition that may be true, but without more, it does not account for the need to examine under the Szendrey framework, the consequences of a plaintiff's waiving claims against a third-party defendant and of binding itself to limit collection to that part of the judgment attributable to the remaining defendants' proportionate share of liability, thus reproducing the net result derived from application of solidarity rules under the Puerto Rico Civil Code. To that extent, the "legally impossible" proposition runs counter to the Puerto Rico Supreme Court's express holding that in the settlement agreement, "the victim may release the co-causer of all liability … toward the victim as well as in the internal relationship between co-causers." U.S. Fire Insurance Co. (Attachment V), at p. 9. When that occurs, "the victim assumes the portion of liability that is attributed to the released co-causer … [and] the other co-causers of the damage cannot recover from the released co-causer an[y] amount whatsoever." Similarly, in Sagardía de Jesús (Attachment VI), the Supreme Court expressed that if "the victim releases a co-defendant from all liability to the victim as well as to the liability existing between the codefendants," by assuming

the share of liability attributed to the released tortfeasor, the remaining tortfeasors cannot recover anything from the released tortfeasor. Id. at 7.

The appellate panel did not articulate any principled basis to bypass these holdings –none exists– making that part of its ruling unpersuasive to support the proposition for which Cybex has cited it. However, the panel looked beyond the settlement agreement to focus on the contractual arrangements that linked Reyes Contractor to HA, which fully explains the result reached. In that sense, it observed that there were insurance policies issued by Mapfre-Praico in favor of Reyes Contractor that were made extensive to HA. See, Febles Montalvo (Exhibit No. 277, Exhibit 6)(Attachment VII), at p. 8 (describing policies). Moreover, pursuant to a Certificate of Insurance, Reyes Contractor had released HA and bound itself and its insurance company to provide HA with, and bear the cost of, legal representation, and to paying any judgment against HA. Id. Furthermore, Reyes Contractor had included HA as an additional insured in its insurance policies. Id. On that record, neither plaintiffs nor Reyes Contractor or Mapfre-Praico could have waived Reyes Contractors' contractual commitments to pay for HA's share of judgment, costs and attorney's fees, unless HA agreed to it, and it had not. But that is not where Cybex stands, because, so far as the parties have represented and the court ascertained, none of the settling parties ever entered into a contract assuming Cybex's share of the judgment, costs, and attorney's fees.

Third, Cybex argues that it would be premature to dismiss its third-party claims against the settling defendants, for in Río Mar, 522 F.3d at 165-166, the First Circuit allowed a non-released defendant to maintain a cross-claim for contribution under a successive tortfeasor liability scenario, recognizing that Szendrey, 2003 TSPR 18 (Attachment I), did not provide "sweeping condemnation of all contribution claims under all circumstances" (Docket No. 277, p. 10). In that way, it posits that it would be "inappropriate to allow dismissal of its contribution and

indemnification claims on the basis of <u>Szendrey</u> alone." <u>Id.</u> Neither <u>Río Mar</u> nor <u>Szendrey</u> precludes dismissal of the actions Cybex filed against the settling defendants.

In <u>Río Mar</u>, plaintiffs sued a hotel and a hospital; defendants filed cross-claims against each other; and prior to trial the hospital settled with plaintiffs through a <u>Pierringer</u> release. <u>See</u>, 522 F.3d at 161-162 (describing procedural background). Plaintiff filed a notice of voluntary dismissal against the hospital, which was granted. <u>Id.</u> The district court then decided to bifurcate the case in two phases, with a first trial on the action against the hotel, and a second trial "for any damages that the hospital may have caused. <u>Id.</u> at 161. Nevertheless, after the jury returned a $1,844,000 verdict in favor of plaintiff, the district court entered judgment against the hotel for the total amount of the verdict, denied its motion for a setoff, and dismissed its cross-claim. <u>Id.</u> at pp. 161-162. The First Circuit reversed to allow the second trial to proceed in order to fix the proportionate share of the hotel and hospital's liability (<u>id.</u> at p. 168) because the hotel was the only defendant at trial, the evidence presented pertained to the hotel's negligence and involvement in the events leading to plaintiff's injury, the jury was instructed to consider damages only as to the hotel (<u>id.</u> at p. 162), and the hotel was entitled to some process by which it could test how the plaintiff's total damages should be allocated between it and the hospital. <u>Id.</u> at p. 164.

In <u>Szendrey</u> (Attachment I), plaintiff reached a settlement agreement with one of the codefendants (Hospicare). After examining the terms of the agreement, the trial court dismissed the complaint against Hospicare. A co-defendant – INDECA – unsuccessfully requested reconsideration and in the alternative, leave to file a third-party complaint against Hospicare. The court of appeals reversed the trial court, concluding that the third-party complaint was in order inasmuch as allegedly all of the defendants were joint tortfeasors with respect to the damages claimed, and the determination of their proportional share of liability required that all of them be

parties to the action. Otherwise, according to the appeals court, the principle of procedural economy would be impaired because once damages were awarded, INDECA would have to file a separate, post-litigation action for contribution.

The Puerto Rico Supreme Court reversed, upholding the trial court's determination. The Supreme Court pointed out that plaintiffs had: (1) released Hospicare from: (i) all liability arising from the facts of the case relevant to the action; (ii) the damages claimed; and (iii) claims or judgments in favor of plaintiffs to recover from Hospicare, while (2) reserving their right to continue litigation against the other codefendants. Id. at p. 6. As a result, it concluded that even if the final judgment to be rendered in due course found that the non-settling codefendants contributed along with Hospicare to plaintiff's damages, the third-party complaint was not necessary or tenable because the judgment would have to assess the total cash value of the damage caused to plaintiffs by all of the tortfeasors, and deduct from that amount a sum equivalent to Hospicare's degree of liability. Id. at pp. 6-7.

On this account, the key question in Río Mar and Szendrey focused on the need to determine the degree or portion of liability of the settling defendant in light of the structure of the agreement the settling parties had subscribed. As such, they do not preclude dismissal in order to allow Cybex "to determine the settling defendants fault" (Docket No. 323, p. 3). On the contrary, consistently with their holding, Cybex will be given the opportunity to establish at trial, in the absence of the settling defendants as a party, its own share, if any, of liability in accordance with Puerto Rico law. See, Quilez-Velar, 2017 TSPR 165, Certified Translation (Docket No. 317, Exhibit 1)(Attachment III)(validating reduction of damages on account of an absent party's proportionate share of liability).

<u>Quilez-Velar</u> is instructive. In that case, plaintiffs sued Ox Bodies in federal court under a theory of products liability and other non-diverse defendants and the Municipality of San Juan in state court under Puerto Rico's general tort statute. <u>Id.</u> at p. 1. Ox Bodies filed a third-party complaint against the Municipality, the Municipality deposited in court the statutorily imposed monetary cap of its insurance liability ($500,000), and the case proceeded to trial without the Municipality as a party.[9] The jury returned a $6,000,000 verdict for plaintiffs, allocating 80% of liability to the Municipality and 20% to Ox Bodies. The Puerto Rico Supreme Court held that Ox Bodies was entitled to a reduction of the award in proportion to the Municipality's proportionate share of liability, making it liable for $1,200,000. <u>Id.</u> at pp. 1-2; 4-5.

Cybex argues that <u>Quilez-Velar</u> is distinguishable because it involved a government entity which had imposed by law a statutory cap on its liability, the codefendant's claim for contribution was barred by statute, not by a private settlement agreement, and the co-defendant was unable, by operation of law, to recover from the government on a theory of contribution as a result of a law that was held akin to statutory employer indemnity (Docket No. 323, p. 4). Those are distinctions devoid of significance, as the basic point is that the jury validly allocated each of the codefendants' degrees of liability even though one of those defendants was no longer a party in the case. On that basis, see <u>Stefano</u> v. <u>Smith</u>, 705 F.Supp. 733, 737 (D. Conn. 1989)(applying comparative-fault rule to hold that a defendant who settles and against whom the complaint is accordingly withdrawn is no longer a party to the action, but that does not prohibit a remaining codefendant to introduce evidence at trial that a person who is not a party to the lawsuit is responsible for the harm incurred;

---

[9] The Puerto Rico Autonomous Municipalities Act, Law No. 81 of August 30, 1981, as amended, P.R. Laws Ann. tit. 21 § 4704, specifies that autonomous municipalities shall only answer for a maximum of $75,000 per person or $ 150,000 where damages have been caused to more than one person or in cases of several causes of action. If the municipality has obtained liability insurance, it shall answer up to the maximum amount of the coverage pursuant to the Puerto Rico Insurance Code, P.R. Laws Ann. tit. 26 § 2004.

hence, the non-settling codefendant may introduce evidence that the injury was caused by the fault of that other person); and Zurich America Ins., 828 F.Supp.2d at 470-471 (specifying in dismissing third-party complaint, that to the extent third-party plaintiffs established the third-party defendant's share of liability, their contribution would be reduced accordingly).[10]

Fourth, Cybex states it has the right to proceed with its contribution claims because the contribution claims in Szendrey were brought after the settlement and Cybex brought its third-party complaints before settlement was reached (Docket No. 323, p. 3). Unless there is a potential statute of limitations issue, the date an impleader is brought is not material, for settlement agreements may be entered into at any point before judicial action is initiated or thereafter, prior to trial or after trial. See, Fleming v. Threshermen's Mut. Ins. Co., 388 N.W. 2d 908, 910 (Wis. 1986)(noting that many defendants settle before a plaintiff commences suit against other tortfeasors such that it would be counterproductive to require a defendant to insist that a plaintiff commence suit prior to settlement in order that cross-claims could be filed before settlement); U.S. Fire Insurance, 2008 TSPR 160 (Attachment V), p. 2 (settlement after the trial court granted complaint ordering payment of the amount claimed therein); Sagardía de Jesús, 2009 TSPR 173 (Attachment VI) p. 3 (settlement before trial). So too a tortfeasor may bring forth a contribution action either within the same suit where judgment was entered determining the solidarity of the obligation or through an independent suit. See, Wojciechowicz, 474 F.Supp.2d at 295 (discussing

---

[10] See also, Austin Ex Rel. Soiett v. Universal Cheerleaders Ass'n, 812 A. 2d 253, 255 & n. 1 and 2 (Me. 2002)(Pierringer release does not preclude submission of the issue of the released tortfeasor's fault to the fact-finder in a suit against the nonsettling tortfeasor; the released defendant is entitled to be dismissed with prejudice from the case but trial court must preserve for the remaining parties a fair opportunity to adjudicate the liability of the released and dismissed defendant); Valet, So. 2d at 161 (non-settling obligor entitled to have trial court determine settling obligor's percentage of fault and have amount of award reduced by that percentage).

and applying formulation). The effects of the settlement agreement do not change with the timing of the underlying action.

Fifth, Cybex claims that Puerto Rico recognizes different multi-tortfeasor scenarios that may need to be treated differently, positing that: (i) the potential liability of, and among the parties is not clear; (ii) plaintiffs theory of the case is a mystery; (iii) the parties' responsibilities are open-ended; and therefore (iv) it is uncertain which if any of the multi-tortfeasor scenarios this case presents (Docket No. 277, p. 4). And so it maintains that until certainty or more certainty is reached, the settling defendants' dismissal request is "premature at best and must be denied." Id.

The argument is unavailing, given that extracontractual solidarity "does not presuppose that the scope or source of liability is identical for each solidary debtor." Tokyo Marine and Fire Ins. Co., Ltd., 142 F.3d at 6. It may operate even when the creditors and the debtors are not bound in the same manner, for the same periods and under the same conditions, to the point that solidary debtors may be obligated in different degrees. Id. An obligation may be *in solido* notwithstanding the fact that the obligations of the obligors arise from separate acts or by different reasons. See, Joiner v. Diamond M. Drilling Co., 688 F.2d 256, 263 (5th Cir. 1982)(so holding under the Louisiana Civil Code). In this light, a settlement agreement involving releases as to both the external and internal aspects of the solidary obligation makes the parties' ultimate theory of liability irrelevant, by protecting the non-settling tortfeasor from paying more than its portion of liability. Therefore, the right to contribution is recognized even when tortfeasors are "liable under different theories of tort liability." Lehman, 166 F.3d at 394.[11] This formulation fits Río Mar and

---

[11] See also, Vélez v. Cessna Aircraft Company, 2011 WL 13234190, *1, *4 (D.P.R. 2011)(aircraft manufacturer solidarily liable in Puerto Rico with aircraft operators and those who provided maintenance to the aircraft in a case for damages resulting from a fatal crash that killed all on board). Thomas v. W &W Clarklift, Inc., 375 So.2d 375, 377-378 (La. 1979)(in Louisiana, two defendants may be solidarily liable even if sued under different theories of law, one for breach of warranty and negligence, and the other for negligence).

subsequent developments in Puerto Rico.

On this end, Río Mar evaluated the effect of a partial settlement based on a Pierringer release in a successive tortfeasor setting, which it distinguished from garden-variety joint tortfeasor scenarios, applying the proportional-share rule used in case of joint tortfeasors because the Pierringer release "molds the successive tortfeasor scenario into one strongly resembling" joint tortfeasor situations where each defendant is "ultimately responsible only for its proportionate share of overall damages." Id. at pp. 165-166. It described the situation of tortfeasors linked only by principles of vicarious liability as less easily resolved, as from its perspective, when one tortfeasor is vicariously liable for the actions of another, the same damages are by definition attributed to each of the tortfeasors. Id. at p. 165.

After Río Mar, the Puerto Rico Supreme Court decided Sagardía de Jesús (Attachment VI), which validated the use in a vicarious-liability setting of the offset rule, when the trial court permits nonsettling tortfeasors to present evidence regarding the settling defendants' percentage of responsibility, a development the First Circuit acknowledged in Gómez v. Rodriguez-Wilson, 819 F.3d 18, 22-23 (1st Cir. 2016). Most recently, in Fonseca (Attachment III), the Puerto Rico Supreme Court looked into the effect of a settlement agreement in a vicarious liability scenario where a hospital was found jointly liable with the defendant doctors. The plaintiffs and the doctors settled, the plaintiffs reserving their right to collect against the hospital in proportion to the hospital's fault. However, the hospital was deemed released by the settlement agreement, for no evidence was presented that the hospital was at fault in any degree.

Closing the circle, all multi-tortfeasor scenarios referred to in Río Mar –those involving garden-variety joint tortfeasors, successive tortfeasors, and tortfeasors joined by principles of vicarious liability– lead to the same result: payment of damages subject to each of the tortfeasors'

proportionate degrees of fault, without regard to the parties' theories of liability. In consequence, that different liability scenarios may exist does not preclude dismissal. See, Safeway Stores v. Nest-Kart, 579 P.2d 441-443 (Cal. 1978)(applying principles of comparative negligence to apportion responsibility between a strictly liable defendant and a negligent defendant, as well as between multiple negligent defendants).[12]

Sixth, Cybex contends that: (i) contribution is different than indemnity; (ii) it has sued the settling defendants not only for contribution but also for indemnity; and hence, (iii) it is entitled to maintain the indemnity action because it is not liable at all, much less liable in concert with the settling defendants (Docket No. 277, pp. 6, 8-9). It states that indemnification is not only viable but in its view, a likely outcome of this litigation. Id. An action for contribution shifts part of the loss depending on the comparative responsibility of the parties. See, Doyle v. Rhodes, 451 N.E. 2d 382, 390 (Ill. 1984)(so noting). Indemnity has the effect of shifting the entire loss from the defendant to another party. Id. It ". . .enures to a person who, without active fault of his own part, has been compelled by reason of some legal obligation to pay damages occasioned by the initial negligence of another," thereby permitting the person made responsible for the payment to move against the author of the damage for recovery of the amounts spent in the discharge of its liability. Lucas v. Hackett Associates, Inc., 18 F.Supp.2d 531, 535 (E.D. Pa. 1998).[13]

---

[12] Puerto Rico is a "comparative-negligence jurisdiction." Rodríguez v. Señor Frog's de la Isla, Inc., 642 F. 3d 28, 37 (1st Cir. 2011); Candelario Del Moral v. UBS Financial Services Incorporated of Puerto Rico, 2016 WL 1275038, * 25 (D.P.R. April 6, 2016)(discussing concept).

[13] See also, Restatement, Restitution § 96, at 418 (1937)(a person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability); 2-1 Planiol, *Treatise on the Civil Law,* Louisiana State Law Institute (1959), § 913, pp. 513-514 (the person made responsible for another has an action against the author of the damage, which it may institute if held liable).

Indemnity may arise contractually, and where it has been recognized, extracontractually. See, <u>Gibbs-Alfano</u> v. <u>Burton</u>, 281 F.3d 12, 20 (2d Cir. 2002)(referring to contractual and "common law" indemnity). However, no indemnity contract has been alleged or demonstrated to exist in this case. So, relying on <u>Cortijo-Walker</u> v. <u>Water Resources Authority</u>, 91 P.R.R. 557 (1964), the settling defendants argue that: (i) there is no discernible or practical distinction between contribution and noncontractual indemnity in Puerto Rico; (ii) any indemnity claim against them would fail; and (iii) in consequence, it poses no impediment to dismissal (Docket No. 33, p. 5).[14]

In <u>Cortijo Walker</u>, the Puerto Rico Supreme Court stated that the technical distinction between the concepts of contribution and indemnity for all practical purposes "may seem to be cutting it a bit fine." <u>Id.</u> at 565. In like manner, <u>Pierringer</u>-type releases have been held to impute to the plaintiff whatever liability in contribution or indemnity the settling joint tortfeasor may have to the nonsettling joint tortfeasor, and to bar subsequent contribution or indemnity actions the nonsettling joint tortfesor might assert against the settling joint tortfeasor. See, <u>Brandner by Brandner</u> v. <u>Allstate Ins. Co.</u>, 512 N.W. 2d 753, 762 (Wis. 1994)(so acknowledging). Furthermore, the First Circuit has pointed out that "by definition and extrapolation" noncontractual indemnity claims are in effect, "only a more extreme form of [a claim] for contribution." <u>U.S.</u> v. <u>Cannons Engineering Corp.</u>, 899 F.2d 79, 92 (1st Cir. 1990). By extension, it makes no difference whether a tortfeasor demands contribution of 90% of the damages if found 10% liable or of 100% if found liable on a theory of vicarious or analogous liability, without evidence of fault.

---

[14] Cybex moved to strike the reference to <u>Cortijo-Walker</u> because the settling defendants did not provide the court with a certified English translation of the case (Docket No. 323, pp. 4-5). The request must be denied. Cybex should know that Puerto Rico Reports (P.R.R) are official translations of the "Decisiones de Puerto Rico," that is, of the decisions of the Puerto Rico Supreme Court. <u>See</u>, <u>Aybar v. F&B Mfg. Co., Inc.</u>, 498 F.Supp. 1184, 1193 & n.18 (D.P.R. 1980)(explaining term). They have been cited by the First Circuit –<u>see</u>, <u>Alcoa Steamship</u> v. <u>Pérez Rodríguez</u>, 376 F.2d 35, 39 (1st Cir. 1967)– and this court. <u>See</u>, <u>Aybar</u>, 498 F.Supp. at 1193.

The 90% scenario involves partial contribution whereas the 100% scenario, the one typically associated with indemnity, is but total contribution. See, In re U.S. Oil and Gas Litigation, 967 F.2d 489, 495 (11th Cir. 1992)(finding no principled distinction between bar orders against contribution and orders against indemnity); Austin Ex Rel. Soiett v. Universal Cheerleaders Ass'n, 812 A.2d at 255 (a Pierringer release enables a plaintiff to settle with one defendant without releasing a nonsettling defendant from liability, allowing the settling defendant to avoid becoming liable to the nonsettling defendant for contribution or indemnity). And because Cybex's claims for contribution can validly be barred in the course of implementing a Szendrey/Pierringer agreement,[15] its claim for "total contribution, i.e., indemnity, can likewise be foreclosed." See, In re U.S. Oil and Gas Litigation, 967 F.2d at 92-93 (so holding); Alumax Mill Products, Inc., 912 F.2d at 1010-1011 (dismissing cross-claims for contribution and indemnity against settling defendants, as pursuant to settlement agreement the nonsetting defendant would only be liable for its own proportionate share of damages).

Seventh, Cybex states it should be entitled to recover costs and attorney's fees from the settling defendants "as part of its claim for noncontractual indemnification" (Docket No. 323, pp. 5-6). The general "American Rule" is that each side bears its own litigation costs and that the prevailing party is not entitled to recover attorney's fees. See, In re Puerto Rican Cabotage Antitrust Litigation, 815 F.Supp.2d 448, 457 (2011)(so noting). Nonetheless, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, the prevailing party is entitled to an award of costs other than attorney's fees unless a federal statute, the Federal Rules of Civil Procedure or a court

---

[15] See, U.S. Fire Insurance Co. (Attachment V), p. 9 (when the victim assumes the portion of liability that is attributed to the released co-causer "the other co-causers of the damage **cannot recover from the released co-causer an[y] amount whatsoever**")(emphasis added); Sagardía de Jesús (Attachment VI), p. 7 (by the victim's "assuming the share of liability attributed to the released tortfeasor, **the remaining tortfeasors cannot recover anything from the released tortfeasor**")(emphasis added).

order provides otherwise. See, Fed.R.Civ.P. 54(d)(awarding of costs to prevailing party). Likewise, Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure provides in part that: "[i]n the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct." P.R. Laws Ann. tit. 32, App. V, R. 44.1.[16] Rule 44.1(d) has substantive effect. See, Servicios Comerciales Andinos, S.A. v. General Elec. Del Caribe, Inc., 145 F.3d 463, 478 (1st Cir. 1998)(recognizing substantive character of Rule 44.1(d)); Gómez, 819 F.3d at 23 (similar). In a diversity case in which the substantive law of Puerto Rico supplies the basis of decision, a federal court applies Rule 54(d) in connection with costs and Rule 44.1(d) as to attorney's fees.

The purpose behind Rule 44.1(d) is not to compensate the prevailing party, but to penalize a losing party that because of its obstinacy and insistent frivolous attitude has forced the other party to assume the pains, costs, efforts, and inconveniences of a litigation, needlessly. See, Candelario, 2016 WL 1275038 at **30-31 (discussing Rule 44.1(d)). For this reason, attorney's fees are payable only if the offending party's behavior results in a litigation that could have been avoided, or prolongs the litigation needlessly, or obligues the other party to embark on needless procedures. Id. at 31. Still, the mere fact that a party prevails before a jury does not, without more, entitle it to an award of attorney's fees. See, Reyes v. Banco Santander de Puerto Rico, 583 F.Supp. 1444, 1446 (D.P.R. 1984)(articulating and applying concept). That the fruit of its labor was successful does not mean the opponent was obstinate. Id. at 1445-1446. Once the court determines that a party has been obstinate, however, the imposition of attorney's fees and prejudgment interest

---

[16] Similarly, Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure imposes pre-judgment interest on obstinate non-prevailing parties. See, P.R. Laws Ann. tit. 32, App. V, R. 44.4(b)(so decreeing).

is obligatory.  Id.  Assessment of obstinacy must be made within the context of the case as a whole.

See, Candelario, 2016 WL 1275038 at *34 (examining proposition).

From this perspective, when a settling tortfeasor is adjudged a percentage of responsibility, the plaintiff subrogates herself in the settling tortfeasor's position.  See, Gómez, 819 F.3d at 22 & n.4 (examining effect of settlement agreement).  And in general, one who rests on subrogation "stands in the place" of one whose claim he has paid or absorbed.  See, U.S. v. Munsey Trust Co. of Washington, D.C., 332 U.S. 234, 242 (1947).  The rights to which the subrogee succeeds are the same as, but no greater than those of the person for whom he is substituted.  See, Bales v. Warren County, 478 N.W. 2d 398, 400 (Iowa 1991)(describing subrogation).

The subrogee cannot acquire any claim, security or remedy the subrogor did not have.  Id. But the rights, claims, and securities to which it succeeds are taken subject to the limitations, burdens, and disqualifications incident to them in the hands of the party to whom it is subrogated. Id.  As a result, assuming Cybex prevailed in the litigation and were able to support a colorable claim against the settling defendants under Rule 44.1(d), the settlement agreement between plaintiffs and the settling defendants would not prevent Cybex from moving for recovery of costs as a prevailing party under Rule 54(d), and of attorney's fees against plaintiffs as defendants' subrogees under Rule 44.1(d).

## III.     CONCLUSION

In view of the foregoing, the settling defendants' motion for summary judgment (Docket No. 236) is GRANTED and the Universal defendants' motion for summary judgment (Docket No. 279) is DENIED.  The name of all defendants will be individually included on the verdict from in order to allow the jury to properly allocate liability as to each of them.  The third-party claims against the settling defendants are hereby dismissed.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2018.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
U.S. DISTRICT JUDGE